OPINION
{¶ 1} The current matter is before the court on appeal from a judgment of the Lake County Court of Common Pleas.
 {¶ 2} On June 26, 2002, Officer Stephen Tryon received information that appellant, Brian Beltowski and a friend, Lisa Erhart, stole a vehicle from Premier Paints, a business located on Vine Street in Eastlake, Ohio. Later that day, Erhart was questioned regarding the theft; she ultimately admitted to participating in the theft of the vehicle. Subsequently, Officer Tryon interviewed Erhart regarding a large number of breakings and enterings which had occurred in Lake and Cuyahoga Counties. Tryon indicated there was a great deal of evidence implicating Erhart and appellant in the crimes. After her Miranda warnings, Erhart identified various places which she and appellant broke into. Erhart was held overnight and released on June 27, 2002 pending charges.
 {¶ 3} On June 28, 2002, appellant called Det. Christopher Bowersock from his mother's house. Appellant told Det. Bowersock where the stolen vehicle could be located and explained that the officers could pick him up at his mother's house. On the same day, Det. Bowersock and Officer Tryon went to the home of appellant's mother where the officers took appellant into custody. Det. Bowersock stated that he explained to appellant's mother why they were there and told her he was aware of appellant's drug problems. Appellant's mother testified that Det. Bowersock told her that appellant needed drug treatment, not jail time, and that "he would do whatever he could to help." Further, appellant's mother testified that appellant was high on heroin when he was arrested. At the suppression hearing, Det. Bowersock denied making any promises that he would assist appellant in seeking drug treatment. Moreover, Bowersock testified that he told appellant that "a recommendation could be made [to the prosecutor] for him to obtain drug treatment programs or some type of drug treatment." Bowersock additionally testified that appellant did not appear impaired at the time of the interview.
 {¶ 4} Det. Bowersock and Officer Tryon returned to the Eastlake Police Department where he was jailed between his arrest on June 28 and his interview on June 29.[1] Appellant was Mirandized and subsequently confessed to participating in a long list of breakings and enterings resulting in the underlying indictment. It was ultimately established that, at some point during or prior to the interview, Officer Tryon told appellant that he would speak with the prosecutor and attempt to "bundle" all the cases into one prosecution.
 {¶ 5} At the suppression hearing, the issue was whether appellant's confessions were voluntary. Before putting on evidence, defense counsel advised the court that appellant was not going to testify. After defense counsel rested, he moved the court to grant him thirty days to supplement his motion to suppress to allow him to address other issues brought forth at the hearing. The trial court stated that it would consider anything that defense counsel filed; however, the court added, the suppression hearing itself was over.
 {¶ 6} The trial court requested brief final arguments. After the state summarized its argument, the court asked defense counsel to move forward and, in particular, address the impact, if any, of whether the arrest occurred on June 28 or June 29. While presenting his closing, the court engaged defense counsel regarding whether there was any reliable evidence that appellant was "high" on heroin during the interview. After the court determined it had no verifiable evidence of appellant's intoxication, it made its ruling from the bench. During it ruling, defense counsel attempted to address the court whereupon the court ordered appellant to "sit down." Again defense counsel attempted to address the court; the court advised defense counsel sit down and "stop arguing." Immediately thereafter, the court stated:
 {¶ 7} "Promises, if they did occur to Mrs. Beltowski, and they may have. She testified. I have no reason to doubt her. I am not sure of the form of the promise as far as drug treatment, doesn't matter, unless those promises resulted somehow or caused apprehension of Mr. Beltowski to occur.
 {¶ 8} "Statements made to anybody, including a mother doesn't matter unless the reliance on Mr. Beltowski is shown that those promises were made. There is not evidence of that whatsoever, of any communication * * *"
 {¶ 9} After the preceding statement, defense counsel stood up and announced that appellant desired to testify. The court did not allow appellant to testify as it had already rendered the thrust of its decision.
 {¶ 10} After his motion to suppress was denied, appellant pleaded no contest to a lesser included offense of count one, Attempted Engaging in a Pattern of Corrupt Activity, a third degree felony[2] in violation of R.C. 2923.02 and R.C. 2923.32(A)(1). Appellant also pleaded no contest to thirty three counts of Breaking and Entering, felonies of the fifth degree in violation of R.C. 2911.13(A).[3] The trial court accepted appellant's plea and subsequently sentenced appellant to an aggregate term of thirteen years: three years on one count of Attempted Engaging in a Corrupt Activity and six months for each count of Breaking and Entering, with twenty six of the Breaking and Entering charges running consecutive with each other but concurrent to the remaining charges.
 {¶ 11} Appellant raises three assignments of error for our review:
 {¶ 12} "[1.] Appellant's confession should have been suppressed because it was involuntary.
 {¶ 13} "[2.] The trial court committed reversible error by refusing to admit testimony of the appellant during the suppression hearing.
 {¶ 14} "[3.] The consecutive sentences imposed upon appellant are contrary to law because they are not commensurate with the offenses or consistent with sentences imposed for similar crimes."
 {¶ 15} In his first assignment of error, appellant contends that the trial court erred in denying his motion to suppress oral confessions as they were elicited in a manner which rendered them involuntary.[4]
Specifically, appellant's argument has three separate dimensions; namely, appellant claims his oral confessions were involuntary because (1) he was allegedly promised drug treatment which he reasonably believed he would receive in lieu of prison; (2) he was allegedly promised that his various charges would be consolidated into one prosecution creating the reasonable belief that either his ultimate charge(s) would be reduced to one or sentence(s) would run concurrently;[5] and (3) he was allegedly experiencing heroin withdrawal at the time of his confession which undermined his ability to act voluntarily. Appellant argues that, when observed in their totality, the foregoing circumstances demonstrate appellant's confession was involuntary in violation of his right to due process.
 {¶ 16} On a motion to suppress evidence, the trial court serves as the finder of fact and is the primary judge of witness credibility and evidential weight. State v. Mills (1992), 62 Ohio St.3d 357, 366. An appellate court reviewing the denial of a motion to suppress inspects the record anew without deference to the legal conclusions of the trial court. See State v. Curry (1994), 95 Ohio App.3d 93, 96. However, a reviewing court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. State v.Retherford (1994), 93 Ohio App.3d 586, 592.
 {¶ 17} Appellant's argument focuses upon the voluntariness of his confessions; the test for voluntariness is whether, in light of the totality of the circumstances, the authorities obtained the incriminating statements by coercion or improper inducement. State v. Arrington
(1984), 14 Ohio App.3d 111, 114, citing, Haynes v. Washington
(1963), 373 U.S. 503, 513-514. With respect to improper inducements or promises, the constitution requires a confession to be:
 {¶ 18} "`the product of a rational intellect and a free will.' * * * The fifth amendment secures `the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." * * * Consequently, a confession `must not be extracted by any sort of threats or violence, norobtained by any direct or implied promises, however slight, nor by theexertion of any improper influence.' United States v. Tingle (C.A. 9, 1981), 658 F.2d 1332, 1335 (internal citations omitted), (emphasis added.)
 {¶ 19} Where an appellant "`is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible. The offer or promise of such benefit need not be expressed, but may be implied from equivocal language not otherwise made clear.'" Arrington, supra, at 115, quoting People v.Flores (1983), 144 Cal. App. 3d 459, 469.
 {¶ 20} That said, an officer's promises that a defendant's cooperation will be "considered" will not invalidate an otherwise legal confession.State v. Ashford (Feb. 16, 2001), 11th Dist. No. 99-T-0015, 2001 Ohio App. LEXIS 583, at 7, citing State v. Loza (1994), 71 Ohio St.3d 61, 67. Moreover, a confession has been held valid even where an officer offers "help" to a defendant in exchange for a confession. Ashford, supra, citing State v. Chase (1978), 55 Ohio St.2d 237.
 {¶ 21} In the instant matter, we find no evidence of any promises made by either Detective Bowersock or Detective Tryon from which appellant might reasonably expect benefits in exchange for more lenient treatment.
 {¶ 22} Initially, there is no record evidence that appellant was ever promised drug treatment in exchange for his cooperation. At the suppression hearing, appellant's mother, Anna Beltowski, testified that when the officers arrived at her home to retrieve appellant, Detective Bowersock indicated that he knew Brian had a drug problem. According to Mrs. Beltowski, Bowersock: "told [her] that Brian needed drug rehab not jail time. And he said he would do whatever he could do to help him."
 {¶ 23} Assuming arguendo, that Bowersock made such statements we find no error: First, Bowersock's statements do not appear to rise to the level of an offer or a promise. Moreover, even if we were to assume his statements did constitute an offer, there was no reciprocal consideration upon which we might premise an agreement. Further, the so called promise of drug treatment was not communicated to appellant, which begs the question: How might appellant reasonably expect benefits in the nature of more lenient treatment from an offer which was never directly made to him? Finally, as indicated above, even had Bowersock made his statements directly to appellant, the confession would still be valid as it merely communicates an offer of help, not an inappropriate inducement which might undermine the voluntary exercise of appellant's will. See,Ashford, supra, citing State v. Chase (1978), 55 Ohio St.2d 237.
 {¶ 24} Next, appellant claims that his confession was involuntary insofar as Detective Tryon told appellant that he would try to "bundle all the cases together." Appellant maintains that one could reasonably understand Tryon's claim to mean he would receive: (1) leniency as to charges, i.e., only one charge; (2) leniency as to sentence, i.e., concurrent rather than consecutive sentences; or (3) leniency of time and expense, i.e., only one prosecution. We disagree.
 {¶ 25} At the suppression hearing, Detective Tryon testified:
 {¶ 26} "The only thing that I told Brian that I would see if we can do, just try and bundle all of cases all together. That would be up to the prosecutor because being a newer detective, I didn't know exactly how, you know, if we can mix jurisdictions. I was not sure. But I said I could look into it."
 {¶ 27} Despite Detective Tryon's testimony, we find no evidence of his statement during the interview wherein appellant made his various confessions. As such we cannot clearly review the context in which the claim was made. However, within the context of his testimony, there is no evidence that Tryon promised consolidation in consideration for appellant's confessions.
 {¶ 28} Here, the record indicates that appellant's confessions were made of his own volition without inducements or promises of leniency. At best, Tryon's statement indicates a promise that he would look into the possibility of consolidating the charges from the differing jurisdictions. Tryon did not guarantee "one prosecution" as he did not know whether it was possible without consulting the prosecution. Moreover, appellant does not contend that he made his confessions in reasonable reliance upon Tryon's assertion that he would investigate the possibility of consolidating the cases. Without a greater indicia of reliance or additional evidence that Tryon's statement facilitated appellant's confession, we do not think, from the status of the record, that appellant's confessions were an involuntary result of Tryon's claim regarding consolidation.
 {¶ 29} Finally, appellant argues that his confessions were involuntary as he was experiencing heroin withdrawal at the time of the interview. There is no evidence that appellant was impaired when he gave his confessions. The only evidence introduced on this issue was the testimony of appellant's mother; to wit, Anna Beltowski testified that appellant may have been under the influence of heroin when he was initially picked up by Detective Bowersock.
 {¶ 30} However, assuming appellant had a heroin addiction from which he was withdrawing, appellant offered no testimony as to the effects of such a withdrawal. In the past, we have noted that "[t]he presence of [intoxicants] will not, by itself, make a statement per se inadmissible."State v. Stewart, 11th Dist. No 2001-P-0035, 2002-Ohio-7270, at ¶ 49, citing, State v. Stewart (1991), 75 Ohio App.3d 141. Although the presence of drugs or alcohol should be considered within the totality of the circumstances, the amount must sufficiently impair the confessor's abilities to reason. Id., citing State v. Daniel (Dec. 30, 1990), 11th Dist. No. 89-T-4214, 1990 Ohio App. LEXIS 5877, at 26.
 {¶ 31} Any impact of appellant's alleged withdrawal from heroin would require expert testimony on the effects, in particular the short term effects, of heroin withdrawal upon a suspect's ability to reason; specifically, appellant would have been required to put forth evidence that his purported heroin withdrawal was sufficient to impair his abilities to reason. Appellant failed to offer such testimony. A review of appellant's confessions does not indicate his abilities to reason were impaired. Thus, appellant's claim that his confessions were involuntary due to his alleged heroin withdrawal is without merit.
 {¶ 32} In sum, we see no compulsory tactics or improper inducements used during appellant's interview that would indicate appellant's confessions were involuntary. Moreover, we find no objective indication that appellant's purported heroin withdrawal impaired his abilities to reason. As far as we can discern, appellant's confessions were forthright and voluntary, without a scintilla of evidence indicating they were obtained through compulsion, exploitation of his alleged withdrawal, or any untoward inducements.
 {¶ 33} Appellant's first assignment of error is overruled.
 {¶ 34} In his second assignment of error, appellant argues that the trial court committed reversible error by refusing to admit his testimony at the suppression hearing. In support, appellant cites United States v.Carignan (1951), 342 U.S. 36, wherein the United States Supreme Court held that when the admissibility of a confession is at issue, a defendant is entitled to the opportunity to testify as to the surrounding facts in the absence of a jury. Id. at 38.
 {¶ 35} At the suppression hearing, the court heard testimony from Detective Bowersock and Officer Tryon on behalf of the state. After the state rested, the court engaged defense counsel in the following colloquy:
 {¶ 36} "The Court: * * * Now, is defense planning on presenting evidence?
 {¶ 37} "[Defense Counsel]: We have one witness we are going to call.
 {¶ 38} "The Court: All right. Is it your client?
 {¶ 39} "[Defense Counsel]: No.
 {¶ 40} "The Court: All right. Have you talked to your client about his right to testify here; about how he cannot be questioned except for impeachment purposes at trial with regard to his testimony here today?
 {¶ 41} "[Defense Counsel]: I have, Judge.
 {¶ 42} "The Court: He understands that?
 {¶ 43} "[Defense Counsel]: Yes.
 {¶ 44} "The Court: All right. Fine. Not going to testify.
 {¶ 45} "[Defense Counsel]: I appreciate the Court clarifying that for the record.
 {¶ 46} "The Court: Yes. Important for the Court of Appeals, when they look at this, they want to know that he knows what his rights are.
 {¶ 47} "[Defense Counsel]: Thank you, Your Honor.
 {¶ 48} "The Court: I know you are experienced at that. Call your witness."
 {¶ 49} Defense counsel subsequently called its sole witness, Anna Beltowski. After Mrs. Beltowski's testimony, defense counsel rested its case, exhibits were admitted, and defense counsel moved the court for a thirty day extension to file a supplemental motion to suppress evidence. In response, the court stated that defense counsel could file anything he wished and the court would certainly review it; however, the court made it clear that the hearing on appellant's motion to suppress was in progress and would not be postponed. The court then requested counsel for both sides to provide brief final arguments. Following final arguments, the court made its ruling from the bench; after the court stated that it found no evidence of communication between appellant and Bowersock regarding the alleged promises of drug treatment, defense counsel interrupted the trial judge to declare that appellant now wished to testify.
 {¶ 50} In light of the foregoing sequence of events, we hold that appellant was given the opportunity to testify. Appellant, through counsel, declined this opportunity and, after presenting its sole witness, the defense rested. The trial court did not refuse to permit appellant to testify. In fact, appellant was afforded a clear opportunity to testify which he attempted to utilize only after the court indicated it would deny his motion to suppress. On these facts, we find no violation of Carignan.
 {¶ 51} Moreover, after a party has rested, a trial court may, for good cause shown, permit that party to offer additional evidence. The question of whether to reopen a case and accept additional evidence is a matter within the sound discretion of the trial court. State v. Brown, 12th Dist. No. 2002-11-290, 2004-Ohio-503, at 4. Here, defense counsel did not move the court to reopen its case subsequent to resting. However, under the circumstances, appellant decided to be heard only after the court's ruling had been partially announced. Appellant was provided a legitimate opportunity to testify which he declined; although appellant ostensibly changed his mind, he did not do so until the court commenced its findings and conclusions on the record. Thus, even were a valid motion to reopen made, we cannot say that denying appellant's testimony reflected the "perversity of will, passion, or moral delinquency" necessary to find an abuse of discretion. State v. Gephart (May 5, 1995), 11th Dist. No. 94-G-1861, 1995 Ohio App. LEXIS 1893, at 6.
 {¶ 52} Appellant's second assignment of error is without merit.
 {¶ 53} In his third and final assignment of error, appellant takes issue with his sentence; namely, appellant argues that the consecutive sentences ordered by the trial court are not commensurate with the offenses or consistent with sentences imposed for similar crimes.
 {¶ 54} An appellate court reviews a felony sentence de novo. R.C.2953.08(G); see, also, State v. Caldwell, 11th Dist. No. 2002-L-142,2003-Ohio-6964, at ¶ 9. The reviewing court may not vacate a sentence unless it finds by clear and convincing evidence that "the record does not support the sentencing court's findings," or that "the sentence is other wise contrary to law." R.C. 2953.08(G)(2)(a) and (b).
 {¶ 55} At the outset, we note that appellant offers no cases in support of his consistency argument. As the argument is comparative in nature, it cannot be assessed in a vacuum. Thus, we shall disregard this aspect of appellant's challenge. The remainder of appellant's argument may be summed up accordingly: Appellant's sentence of twenty six consecutive six month prison terms is disproportionate to the seriousness of his conduct and out of proportion to the danger, if any, he poses to the public.
 {¶ 56} When imposing consecutive sentences on an offender, the trial court must make three statutory findings. R.C. 2929.14(E)(4). The court must first find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. Id. Next, the court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Id. Finally, the court must find one of the three enumerated circumstances in R.C. 2929.14(E)(4)(a) (through (c).[6]
 {¶ 57} In addition to the foregoing "findings," a trial court sentencing an offender to consecutive sentences must give its reasons for selecting the sentence imposed. R.C. 2929.19(B)(2)(c). This statute has been interpreted to require a court to set forth reasons justifying the findings it made under R.C. 2929.14(E)(4). State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, paragraph one of the syllabus. This entire exercise must occur on record at the sentencing hearing. Id.
 {¶ 58} At the sentencing hearing, the court stated:
 {¶ 59} "I also find that consecutive sentences are necessary in order to protect the public, punish the offender, not disproportionate to the seriousness of the offender's conduct and the danger Mr. Beltowski poses to the public and I find the offenses were committed while the offender was awaiting trial. On many of them I find the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single — part of the course adequately reflects the seriousness of the offender's conduct. I also find the history of crimes demonstrates that consecutive sentences are necessary to protect the public from future crimes and the offender."
 {¶ 60} The court made the requisite findings set forth in R.C.2929.14(E)(4); in fact, although the court was only required to find one of the three situations enumerated in R.C. 2929.14(E)(4)(a)-(c), it found all three applicable. The question before us, however, is not whether the requisite findings were made but, rather, whether the court set forth adequate reasons in support of its findings. To this end, the court stated:
 {¶ 61} "The reasons for not imposing the minimum and imposing consecutive sentences, we are talking about a horrific crime spree that spread in Lake County from January 2000 to February of 2002, Mr. Beltowski has a record, criminal record, which supports the imposition of more than the minimum and consecutive sentences and the best I can determine, each consecutive sentence that I am going to impose represents a separate breaking and entering of a small business in Lake County."
 {¶ 62} Although the court's justification is brief, it does provide sufficient reasons in support of the consecutive sentences. The court buttressed its sentence with its recognition that appellant's string of breakings and enterings persisted for some two years. This lengthy pattern of criminal activity, in conjunction with appellant's past criminal record, were the decisive bases on which the court relied in rendering its judgment. As the court provided substantive justifications for its sentence at the sentencing hearing, we cannot say the sentence is unsupported by its findings or otherwise contrary to law.
 {¶ 63} As a post script to appellant's final assignment of error, the dissent contends appellant's sentence is unconstitutional by virtue of the United States Supreme Court's holding in Blakely v. Washington
(2004), 124 S.Ct. 2531. Appellant did not challenge the constitutionality of his sentence and therefore the dissent raises the issue sua sponte. Although inconsequential to our substantive analysis, we shall respond to the dissent's argument.
 {¶ 64} Generally, we will forbear from discussing any issue not first addressed to the lower court. State v. 1981 Dodge Ram Van (1988),36 Ohio St.3d 168, 170. This principle applies to procedural frailties as well as constitutional rights. Id. App.R. 12(A) sets forth the scope of our review. While we may decide issues not raised by the parties, we abuse our discretion by addressing constitutional issues not raised or briefed by the parties. 1981 Dodge Ram Van, supra, 169-170, 171. If a reviewing court wishes to decide a constitutional issue not argued, the better practice is to permit the parties to first brief it. Id. at 170.
 {¶ 65} We have freely granted parties leave to raise Blakely
challenges in pending appeals. In the current matter, appellant did not seek leave to raise this issue nor did we give the parties an opportunity to brief it. Thus, we would abuse our discretion were we to decide this appeal based on Blakely.
 {¶ 66} Appellant's final assignment of error is overruled.
 {¶ 67} Appellant's three assigned errors lack merit. Therefore, the judgments of the Lake County Court of Common Pleas challenged herein are affirmed.
Grendell, J., concurs,
O'Neill, J., dissents with Dissenting Opinion.
[1] Det. Bowersock disputed that appellant called, was picked up, and jailed on June 28, 2002; however, police records and the testimony of Officer Tryon confirm that appellant was transported to the police department and jailed on June 28, 2002.
[2] A party pleading guilty or no contest to a third degree felony faces a potential prison term of one to five years.
[3] A party pleading guilty or no contest to a fifth degree felony may be sentenced to prison for a term of six to twelve months.
[4] Appellant challenges the voluntariness of his confessions, but does not claim his Miranda rights were violated. Although these issues are analytically similar, the question of the voluntariness of a confession is legally distinct from the question of whether a Miranda violation occurred. State v. Jett (Mar. 31, 1998), 11th Dist. No. 97-P-0023, 1998 Ohio App. LEXIS 1451, 14.
[5] Appellant's sentencing argument and his first two arguments that his confession was involuntary are facially inconsistent: If appellant reasonably believed he would receive treatment in lieu of prison, he could not, at the same time, reasonably believe he would go to prison to serve concurrent prison terms.
[6] R.C. 2929.14(E)(4) requires a court to find one of the following criteria applicable to impose consecutive felony sentences:
"(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing * * *, or was under post-release control for a prior offense.
"(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
"(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."