OPINION
{¶ 1} Appellant, Yoich Ngiraingas, appeals from judgment entries of the Ashtabula County Court of Common Pleas, denying his motion to suppress and convicting him of two counts of aggravated robbery and two counts of abduction. For the reasons that follow, we affirm.
 {¶ 2} On November 23, 2003, the Ashtabula County Grand Jury indicted appellant on two counts of aggravated robbery, each count a first degree felony in violation of R.C. 2911.01(A)(1), and two counts of abduction, each a third degree felony in violation of R.C. 2905.02(A)(2). Each count included a gun specification. At his arraignment, appellant pleaded not guilty to the foregoing charges.
 {¶ 3} Appellant moved to suppress evidence and statements which were made on the date of his arrest. Specifically, appellant maintained that any statements he made just prior to his arrest were involuntary and, therefore, inadmissible. He further argued that a rifle seized from his apartment was inadmissible, as the rifle's seizure was the result of an improper warrantless search.
 {¶ 4} The trial court held a suppression hearing. During the suppression hearing, Patrolman Michael Offensend ("Ptlm. Offensend") and Patrolman Daniel Patriarco ("Ptlm. Patriarco"), of the North Kingsville Police Department, were the sole witnesses to testify. Pltm. Offensend testified that on September 28, 2003, he was dispatched to appellant's apartment in response to appellant's 911 phone call. The dispatcher informed Ptlm. Offensend that appellant claimed he had been threatened by two men and was in his apartment with a rifle for protection.
 {¶ 5} When Ptlm. Offensend arrived at the scene, he confronted Daniel Pole, Jr., ("Daniel") near appellant's apartment. Daniel alleged that appellant had just robbed him and his friend Victor DeLion ("Victor"). Ptlm. Offensend then proceeded to appellant's apartment to obtain his statement.
 {¶ 6} Ptlm. Offensend testified that he saw appellant standing in the window of his apartment holding a broomstick. Before entering the apartment to discuss appellant's 911 call, Ptlm. Offensend asked appellant where the rifle was. Appellant replied that the rifle was in his apartment. Ptlm. Offensend entered the apartment, and Ptlm Patriarco arrived at the scene to assist him. While Ptlm. Offensend spoke with appellant about the 911 call, he observed, in plain view, appellant's rifle. Ptlm. Patriarco retrieved and secured the rifle. Appellant told Ptlm. Offensend that he had called 911 because he felt threatened by Daniel and Victor, and used his rifle for protection. Appellant also provided Ptlm. Offensend with a written statement as to his version of the events which resulted in his 911 call
 {¶ 7} Both Ptlm. Offensend and Ptlm. Patriarco testified that it appeared appellant had been drinking. However, they further stated that appellant was able to comprehend their questions and was able to provide them with a complete oral and written statement regarding his description of what happened on the morning of the offenses.
 {¶ 8} Following the hearing, the court denied appellant's motion to suppress as to appellant's written and oral statements. The court found that appellant had initiated the contact with the patrolmen, that appellant was not in custody at the time of his oral or written statements, and that appellant's oral and written statements were voluntary.
 {¶ 9} The trial court, however, sustained appellant's motion to suppress with respect to the patrolmen's seizure of the rifle. The court reasoned that because the patrolmen's seizure of the weapon was predicated upon safety concerns rather than criminal activity, the seizure was improper. Thus, the court found that the physical evidence of the rifle was inadmissible.
 {¶ 10} A jury was impaneled and this matter was set for an April 21, 2004 jury trial. On April 21, 2004, just prior to the commencement of trial, appellant requested a continuance to obtain new counsel to replace his court appointed counsel.
 {¶ 11} The court ultimately denied appellant's continuance. In doing so, the court stated that appellant had sufficient time to request a continuance to obtain new counsel prior to the day of trial. Also, the court stated that it would be unreasonable to grant appellant's continuance, based upon the absence of any formal entry of appearance by appellant's new counsel and the costs incurred by the state in preparing to go forward with trial on that day.
 {¶ 12} During trial, Daniel and Victor testified as to the events of September 28, 2003. Both men testified that on that day they met appellant at a party. At approximately 4:00 a.m., Daniel and Victor left the party, and appellant asked if they could give him a ride to his apartment. They agreed to give appellant a ride to his apartment.
 {¶ 13} Daniel and Victor testified that when they arrived at appellant's apartment he instructed them to wait in the car while he retrieved money for gas. Their testimony further disclosed that, upon his return, appellant was carrying a rifle. Appellant pointed the rifle at Daniel and Victor and ordered them to throw their money, identification, and the keys out the car's window. Daniel tossed his identification and the car keys out the window, but explained to appellant that he had no money. Victor threw $100 out the window, but informed appellant that he had no identification.
 {¶ 14} Appellant ordered Daniel and Victor in and out of the car, on multiple occasions, by gun point. Daniel testified that during the robbery appellant showed them the bullets in the rifle's ammunition clip. He further testified that he heard a bullet being chambered and that appellant threatened to shoot one of them if they tried to escape.
 {¶ 15} At some point, appellant ordered the men to follow him to his apartment. When appellant turned his back, Victor ran toward the street to flag down a driver. The driver testified that he saw Victor running toward his car yelling for help and shouting that a man had a gun. The driver stated that he stopped to help and Victor appeared scared and nervous.
 {¶ 16} Despite Victor's escape, appellant continued toward his apartment. Daniel proceeded to cautiously walk away from appellant in the direction of some nearby houses.
 {¶ 17} Ptlm. Offensend and Ptlm. Patriarco testified regarding their involvement in this incident. They testified as to appellant's oral statement, and appellant's written statement, which was formally admitted as an exhibit.
 {¶ 18} Finally, appellant testified with regards to his version of the events of September 28, 2003. He stated that Victor and Daniel provided him with a ride to his apartment after the party. Victor and Daniel were in the front of the car while appellant was in the back. Appellant testified that as they were driving to his apartment, Victor and Daniel began to speak in Spanish, and appellant believed that threatening language was being used.
 {¶ 19} Upon arriving at appellant's apartment, appellant maintained that he heard the click of a gun. Appellant testified that he proceeded to reach over the front seat and remove the car's key from the ignition. He stated that he then exited the car and began to run to his apartment. As he ran to his apartment, appellant threw the car keys into the woods near his apartment.[1] Appellant then called 911 and reported this alleged incident.
 {¶ 20} Following jury deliberations, the jury returned a unanimous verdict of guilty on all counts. The court then entered judgment convicting appellant on all counts and sentenced him to an aggregate prison term of six years.
 {¶ 21} From this judgment, appellant filed a timely notice of appeal and now sets forth the following eight assignments of error for our consideration:
 {¶ 22} "[1.] Appellant's Sixth Amendment right to counsel was violated when [the court] refused to continue his trial so he could have the services of a private attorney that he had retained.
 {¶ 23} "[2.] Appellant's conviction of aggravated robbery in violation of Revised Code 2911.01, as alleged in Count I of his indictment, is neither supported by sufficient evidence nor is it supported by the manifest weight of the evidence.
 {¶ 24} "[3.] Appellant's conviction of abduction in violation of Revised Code 2905.02, as alleged in the second count of his indictment, is neither supported by sufficient evidence nor is it supported by the manifest weight of the evidence.
 {¶ 25} "[4.] Appellant's conviction of aggravated robbery in violation of Revised Code 2911.01, as alleged in Count III of his indictment, is neither supported by sufficient evidence nor is it supported by the manifest weight of the evidence.
 {¶ 26} "[5.] Appellant's conviction of abduction in violation of Revised Code 2905.02, as alleged in the Fourth Count of his indictment, is neither supported by sufficient evidence nor is it supported by the manifest weight of evidence.
 {¶ 27} "[6.] The gun specifications in each of the counts of appellant's indictments were neither supported by [sufficient evidence nor] the manifest weight of the evidence.
 {¶ 28} "[7.] Appellant made an oral and written statement to officers of the North Kingsville Police Department which should have been suppressed.
 {¶ 29} "[8.] The trial court below allowed Officer Michael Offensend of the North Kingsville Police Department to testify about observation that he made of evidence that was suppressed because it was seized in violation of appellant's Fourth Amendment rights."
 {¶ 30} Under his first assignment of error, appellant contends that the court erred in denying his motion to continue to obtain new counsel. Appellant argues that, despite the fact that he moved for a continuance on the day of trial, the court's denial of his motion to continue violated his right to obtain counsel of his choice.
 {¶ 31} The Ohio Supreme Court has held that "[t]he grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." State v. Unger (1981),67 Ohio St.2d 65, 67. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 32} Whether the trial court abused its discretion by denying a motion to continue depends upon the reasons for the requested continuance at the time the request was made. State v.Powell (1990), 49 Ohio St.3d 255, 259. On appeal, "[t]he reviewing court must weigh potential prejudice against `a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.' Relevant factors include `the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or * * * dilatory, purposeful, or contrived; [and] whether the defendant contributed to the circumstance which gives rise to the request[.]'" Id., quoting State v. Unger (1981), 67 Ohio St.2d 65, 67-68.
 {¶ 33} In State v. Mays, 11th Dist. No. 2001-T-0071, 2003-Ohio-63, the defendant requested a continuance on the day of a scheduled jury trial to replace his appointed counsel with substitute private counsel. The private counsel had allegedly been hired by his family. The trial court denied the defendant's motion to continue.
 {¶ 34} On appeal, this court affirmed the trial court's decision to deny the defendant's motion to continue to obtain substitute counsel. In doing so, we noted that the jury trial had been scheduled several months before it was scheduled to commence and that the defendant failed to give any indication he wanted to replace his appointed counsel. Id. at ¶ 16. Thus, we concluded that the trial court did not abuse its discretion by overruling the defendant's motion to dismiss.
 {¶ 35} Here, appellant's motion to continue occurred on the day of trial. As aptly noted by the trial court, appellant had ample time to request a continuance prior to trial. The record demonstrates that appellant was appointed counsel more than three months before the jury trial commenced. Absent from the record is any explanation made by appellant justifying his eleventh hour request for a continuance. Also, appellant failed to provide the trial court with an adequate reason why his appointed counsel should be replaced. Therefore, the request could be seen as a delay tactic. See, e.g., State v. Cox (May 23, 1997), 11th Dist. No. 95-T-5279, 1997 Ohio App. LEXIS 2244, (holding that the defendant's untimely request to discharge his counsel just before trial could be considered a delay tactic).
 {¶ 36} Moreover, the trial court considered the costs and prejudice associated with appellant's continuance request. The court specifically noted the additional expenses incurred by the state in having their witnesses at the court in anticipation of trial. Accordingly, the court determined, after balancing the interests involved, that it would be unreasonable to grant appellant's motion to continue.
 {¶ 37} Because the court adequately considered and balanced the various interests relevant to appellant's motion to continue before issuing its denial, we cannot conclude that the court abused its discretion. Thus, appellant's first assignment of error is without merit.
 {¶ 38} For purposes of clarity, we will now examine appellant's seventh and eighth assignments of error in a consolidated fashion. Under his seventh and eighth assignments of error, appellant contends that the trial court erred by failing to suppress his written and oral statements to the patrolmen, and by failing to exclude Ptlm. Offensend's testimony regarding his observation of a rifle in appellant's apartment. Specifically, appellant contends that his statements and Ptlm. Offensend's observations should have been excluded because he was under the influence of alcohol and, therefore, his actions at that time were not voluntary.
 {¶ 39} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v.Mills (1992), 62 Ohio St.3d 357, 366; State v. Smith (1991),61 Ohio St.3d 284, 288.
 {¶ 40} On review, an appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been met. Id. at 592. See, also, State v. Swank, 11th Dist. No. 2001-L-054, 2002-Ohio-1337, 2002 Ohio App. LEXIS 1345.
 {¶ 41} In Miranda v. Arizona (1966), 384 U.S. 436, 444, the United States Supreme Court held that statements stemming from acustodial interrogation are inadmissible, unless the prosecution demonstrates that procedural safeguards were taken to secure the defendant's privilege against self-incrimination. Among these safeguards is the defendant's voluntary waiver of this privilege. Id. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." Id. at 478. However, the safeguards prescribed by Miranda are applicable when the defendant's freedom of action is curtailed to a "degree associated with formal arrest." Beremer v. McCarty
(1984), 468 U.S. 420, 440.
 {¶ 42} Accordingly, if appellant's statements were made during a custodial interrogation, then he is entitled to the full panoply of protections established by Miranda. Id. However, if his statements were not made during a custodial interrogation, then they are admissible regardless of whether such statements were voluntary. Id.
 {¶ 43} A custodial interrogation has been defined as "* * * questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda at 444. TheMiranda Court further opined that "our decision is not intended to hamper the traditional function of police officers in investigating crime. * * * General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process in not affected by our holding." Id. at 477.
 {¶ 44} Here, there was no evidence presented during the suppression hearing which established that appellant's statements were made during a custodial interrogation. To the contrary, Ptlm. Offensend testified that appellant initiated the on-scene questioning via his 911 call. Ptlm. Offensend stated that his purpose at the time of the questioning was twofold: (1) secure the rifle for safety purposes; and (2) allow appellant to inform him of the circumstances that resulted in appellant's 911 call. Absent is any evidence that appellant was a suspect at the time of questioning, or that appellant wasn't free to terminate the discussion with Officer Offensend at any time. Because appellant's statements were not made in the course of a custodial interrogation, he is not afforded the safeguards prescribed byMiranda. Thus, it is irrelevant whether appellant's statements could be considered voluntary. See, e.g., State v. Curtis, 11th Dist. No. 2002-A-0025, 2003-Ohio-6085, at ¶ 19.
 {¶ 45} Also, Ptlm. Offensend stated that while he was speaking with appellant about the 911 call, he observed, in plain view, the rifle. Appellant's statements also informed Ptlm. Offensend that he owned the rifle and used the rifle for protection on the night of the offenses. Again, because appellant initiated the consensual police encounter and was not subject to a custodial interrogation, we cannot conclude that Ptlm. Offensend's testimony with respect to observing a rifle in plain view was inadmissible due to appellant's alleged involuntary actions.
 {¶ 46} Ptlm. Offensend's testimony as to his observation of the rifle in plain view during his consensual encounter with appellant was admissible, as appellant's Fourth Amendment rights were neither implicated nor violated. But, as noted by the trial court, the seizure of the rifle required a showing of its readily apparent incriminating nature. Because the state failed to establish the incriminating nature of the rifle, the seizure of the rifle was deemed improper, while Ptlm. Offensend's testimony as to his observation of the rifle was admissible. Thus, appellant's seventh and eighth assignments of error are without merit.
 {¶ 47} In addition, even assuming that appellant was entitled to the safeguards detailed in Miranda, the testimony at the suppression hearing failed to demonstrate that his actions were involuntary. This court has previously determined that "the presence of [intoxicants] will not, by itself, make a statement per se inadmissible." State v. Stewart, 11th Dist. No. 2001-P-0035, 2002-Ohio-7270, at ¶ 49. See, also, State v.Beltowski, 11th Dist. Nos. 2003-L-126 and 2003-L-150,2005-Ohio-2075, at ¶ 30. Instead, although the presence of alcohol should be considered when determining whether a statement is voluntary, it must be demonstrated that the amount of alcohol consumed sufficiently impaired the ability to reason of the individual giving the statement. Beltowski at ¶ 30.
 {¶ 48} Here, testimony at the suppression hearing demonstrated that both patrolmen suspected that appellant had been using alcohol. But further testimony established that, despite the apparent alcohol use, appellant was able to comprehend their questions and answer in a clear and succinct manner. This is further demonstrated by appellant's written statement which was signed by appellant. Appellant failed to set forth any evidence which showed his use of alcohol on the morning of the offenses impaired his ability to reason. Id. For this additional reason, appellant's seventh and eighth assignments of error are without merit.
 {¶ 49} We will now examine appellant's second, third, fourth, fifth, and sixth assignments of error in a consolidated fashion. Under these assignments of error, appellant first argues that his convictions for aggravated robbery and abduction were not supported by sufficient evidence. Regarding the aggravated robbery convictions, appellant claims that the state failed to present sufficient evidence that he robbed Daniel and Victor at gun point. As to the abduction convictions, appellant claims the state failed to present sufficient evidence that he restrained Daniel and Victor's liberty at gun point.
 {¶ 50} When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average trier of fact of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 51} The state supports a conviction with sufficient evidence either through direct evidence, circumstantial evidence, or both. State v. Waddy (1992), 63 Ohio St.3d 424, 430. The probative values of circumstantial evidence and direct evidence are identical. Jenks at 272.
 {¶ 52} Under R.C. 2911.01(A)(1), the prosecution was required to demonstrate the following to obtain a conviction for aggravated robbery:
 {¶ 53} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 54} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 55} Here, the prosecution presented the testimony of the victims, Daniel and Victor. Both Daniel and Victor testified that appellant robbed them at gunpoint. Specifically, they stated that appellant pointed a rifle at them and ordered them to throw their money, identification, and keys out the car window. Daniel and Victor complied. Moreover, based upon the patrolmen's testimony and appellant's own statements, it was clear that appellant owned the rifle that was used to facilitate the robbery.
 {¶ 56} The evidence provided by the prosecution was sufficient to prove that appellant brandished a weapon while committing a theft offense. Thus, this portion of appellant's assignments of error is not well-taken.
 {¶ 57} Under R.C. 2905.02(A)(2), the prosecution was required to present evidence of the following to obtain a conviction for abduction:
 {¶ 58} "(A) No person, without privilege to do so, shall knowingly do any of the following:
 {¶ 59} "* * *
 {¶ 60} "(2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear[.]"
 {¶ 61} In the case sub judice, Daniel and Victor testified that appellant ordered them by gun point in and out of the car on multiple occasions. Their testimony also revealed that while holding them at gun point, appellant showed them that the rifle was loaded and threatened to shoot one of them if they tried to escape. Again, the patrolmen's testimony and appellant's statements established that he owned the gun which was used to hold Daniel and Victor at gunpoint. Therefore, the state provided sufficient evidence to obtain a conviction for abduction, and this portion of appellant's assignments of error is also not well-taken.
 {¶ 62} Appellant further argues that his convictions for aggravated robbery and abduction were against the manifest weight of the evidence. Appellant contends that the testimony of Daniel and Victor was not credible and, therefore, the jury erred by disregarding his conflicting testimony as to what happened on the morning of the offenses. In support of his claim that Daniel and Victor failed to provide credible testimony, appellant notes that Daniel and Victor were once part of a street-gang and that they had a pre-existing friendship.
 {¶ 63} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 64} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins
at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 65} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."State v. Awan (1986), 22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 WL 286594, at 3. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 66} In the instant case, there was nothing incredible or absurd with respect to the victims' testimony. Both Daniel and Victor provided almost identical testimony of the events that occurred on September 28, 2003. These events included appellant brandishing a rifle, ordering them to relinquish their belongings, and threatening them. Daniel and Victor both testified that when appellant turned his back to lead them to his apartment, Victor fled to a nearby road to obtain assistance from a passing vehicle. The testimony of the driver appellant flagged down corroborated Daniel and Victor's version of what happened. Specifically, the driver testified Victor was yelling that a man had a gun and that Victor appeared scared and nervous.
 {¶ 67} Appellant's contentions regarding the victims' prior affiliation with a street-gang, and their pre-existing friendship, simply fails to establish that their testimony at trial was incredible or absurd. Thus, the choice between the victims' and appellant's conflicting testimony rested solely with the finder of fact and we may not substitute our own judgment for that of the finder of fact. Appellant's convictions were not against the manifest weight of the evidence, and this portion of appellant's assignments of error is not well-taken.
 {¶ 68} Appellant also maintains that his convictions for gun specifications were not supported by sufficient evidence. Specifically, he argues that the prosecution failed to present evidence demonstrating the rifle's operability at the time of the offenses.
 {¶ 69} Under R.C. 2923.11, for an individual to be found guilty of a firearm specification, the state must prove, beyond a reasonable doubt, that the firearm at issue was either operable or could readily have been rendered operable at the time of the offense. State v. Gaines (1989), 46 Ohio St.3d 65, at syllabus. See, also, State v. Church (June 25, 1999), 11th Dist. No. 97-L-248, 1999 Ohio App. LEXIS 2936, at 9.
 {¶ 70} "Notably, the General Assembly in R.C. 2923.11(B)(2) set forth that the trier of fact may rely upon circumstantial evidence in determining whether the firearm was operable. * * * Thus, it is apparent that the General Assembly intended that the state can `rely upon all of the surrounding facts and circumstances in establishing whether a firearm was used in the commission of a felony.'" State v. Thompkins (1997),78 Ohio St.3d 380, 384-385, quoting State v. Murphy (1990),49 Ohio St.3d 206, 208.
 {¶ 71} Here, Daniel's testimony established that appellant showed them that the rifle's ammunition clip was loaded with bullets. Moreover, Daniel testified that he heard appellant chamber a bullet while the offenses were being committed. This evidence was sufficient to establish that appellant's rifle was at least readily operable when the offenses were committed. Thus, this portion of appellant's assignments of error is not well-taken.
 {¶ 72} Finally, appellant argues that the gun specification convictions were against the manifest weight of the evidence as nobody saw a bullet in the chamber of the rifle and the rifle was not fired to demonstrate its operability.
 {¶ 73} Again, Daniel stated that appellant showed them that the rifle's ammunition clip was loaded with bullets and that he heard appellant chamber a bullet. There is nothing incredible or absurd about this testimony, and appellant fails to bring to our attention any evidence that would destroy the credibility of this testimony. Thus, this portion of appellant's assignments of error is also not well-taken.
 {¶ 74} Appellant's second, third, fourth, fifth, and sixth assignments of error are without merit.
 {¶ 75} Based upon the foregoing analysis, appellant's eight assignments of error are without merit. We hereby affirm appellant's convictions.
O'Neill, J., Rice, J., concur.
[1] The car keys were never found.