OPINION
{¶ 1} Appellant, Phillip A. Crouse, appeals the judgments of the Lake County Court of Common Pleas, denying his motion for acquittal, finding him guilty of breaking and entering, theft, burglary with a firearm specification, and grand theft, and sentencing him to five years imprisonment. We affirm Crouse's convictions, but vacate his sentences, and remand this matter to the trial court for resentencing.
 {¶ 2} April 21, 2004, the Lake County Grand Jury indicted Crouse on two counts of breaking and entering, fifth-degree felonies in violation of R.C. 2911.13; two counts of theft, fifth-degree felonies in violation of R.C. 2913.02; one count of disrupting public services, a fourth-degree felony in violation of R.C. 2902.04; one count of burglary, a second-degree felony in violation of R.C. 2911.12, carrying with it a gun specification; and one count of grand theft, a fourth-degree felony in violation of R.C. 2913.02.[1] Crouse pled not guilty to all counts.
 {¶ 3} Jury trial was held. At the close of the state's case, Crouse's counsel moved for acquittal pursuant to Crim.R. 29, which motion was denied. The jury found Crouse guilty of one count of breaking and entering, one count of theft, one count of burglary, with the gun specification, and one count of grand theft. The trial court then sentenced Crouse to serve consecutive terms of imprisonment, including six months each for the breaking and entering and the theft, two years for burglary, with an additional year for the gun specification, and one year for grand theft.
 {¶ 4} The events leading to Crouse's conviction commenced December 29, 2003, when the City of Painesville Police responded to a call from the day manager of the Painesville One Stop Marathon gas station regarding a possible break-in. The police determined that the phone lines to the station had been cut, and that the tape had been taken from the security system. The cash register had been rummaged, items from behind the counter were strewn on the floor, and rolled coins and cigarettes were missing. The lock to the office had been forced, and the contents of the desk strewn on the floor. These included a manila envelope, which had a shoe print on it. This was taken in evidence. It seems that the intruder(s) may have entered through the ventilation system, and used a ladder to go from the upper portion of the building to the main floor.
 {¶ 5} January 1, 2004, the Painesville police responded to the apartment of Robert Moore regarding a potential burglary. A window had been broken, and items from the apartment thrown about. Moore reported various items as stolen, including a loaded pistol, a VCR, a camcorder, a cell phone, a camera, a commemorative lighter set, and a commemorative knife set. The police collected glass from the broken window, and submitted it to the Lake County Crime Laboratory, which determined that fingerprints belonging to Crouse were present.
 {¶ 6} Moore recalled seeing a man in his driveway on the evening before the burglary. Moore claimed that he informed the police of this man on January 1, 2005; the responding officer stated that Moore told them of the man January 8. Moore claimed to have offered the man a ride, which was refused. Moore evidently described the man to police as being about six feet, two inches tall, with a limp. Crouse is five feet, eight inches tall, without a limp. Nevertheless, Moore later identified Crouse as the man he spotted on December 31, 2003.
 {¶ 7} Based on the fingerprint evidence from the broken glass at Moore's apartment, Crouse was arrested at his apartment. The arresting officer stated that he noticed that Crouse was wearing slippers when taken into custody. Crouse claimed that the slippers belonged to his roommate, and that he put them on following handcuffing, since that was easier to do than put on shoes. At trial, it was shown that Crouse's heels protruded from the rears of the slippers. The Lake County Crime Laboratory was able to match the imprint of the slippers with that found at the Painesville One Stop Marathon station. Crouse explained the presence of his fingerprints on the broken window glass from Moore's apartment by stating that on January 1, 2004, he was walking past the apartment, saw the glass on the pavement, and moved it to prevent anyone from injury.
 {¶ 8} Crouse was indicted for the incidents at the Painesville One Stop Marathon station, and Moore's apartment, as well as certain incidents occurring at the Covenant Reformed Presbyterian Church in Painesville. The jury found him not guilty of the charges stemming from the incidents at the church, and of the disrupting public services charge, stemming from the cutting of the phone lines at the Painesville One Stop Marathon, but guilty of all the other charges. Following the return of the verdict, the trial court advanced directly to imposing the sentences which Crouse appeals.
 {¶ 9} Crouse timely noticed his appeal, making four assignments of error:
 {¶ 10} [1.] "The trial court erred when it sentenced the defendant-appellant to more-than-the-minimum and consecutive sentences based upon a finding of factors not found by the jury or admitted by the defendant-appellant in violation of the defendant-appellant's State and Federal Constitutional Rights to trial by jury.
 {¶ 11} [2.] "The trial court erred to the prejudice of the defendant-appellant in ordering a term of imprisonment when the requisite findings under the applicable sentencing statutes were not supported by the facts.
 {¶ 12} [3.] "The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 13} [4.] "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 14} We shall consider Crouse's challenges to his convictions, then those to his sentences.
 {¶ 15} By his third assignment of error, Crouse attacks the sufficiency of the evidence presented in the trial court to support his various convictions. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." As we stated in State v. Peak, 11th Dist. No. 2004-L-124, 2005-Ohio-6422, at ¶ 31, when considering a challenge to the sufficiency of the evidence:
 {¶ 16} "`* * * [A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt.' State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at 8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis
(1997), 79 Ohio St.3d 421, 430, 1997-Ohio-372, 683 N.E.2d 1096."
 {¶ 17} We note that both cases, although apparently unrelated, were tried together in front of the same jury. No motion was made by Crouse for separate trials.
 {¶ 18} Crouse was convicted of breaking and entering in relation to the Painesville One Stop Marathon incident. Regarding breaking and entering, R.C. 2911.13 provides, in pertinent part:
 {¶ 19} "(A) No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony.
 {¶ 20} "(B) No person shall trespass on the land or premises of another, with purpose to commit a felony. * * *"
 {¶ 21} Crouse argues that the only evidence which links him to the Painesville One Stop Marathon incident is the footprint on the manila envelope found in the gas station's office, which matched the print obtained from the slippers he was wearing when arrested for the Moore apartment incident. He asserts that a print from a slipper is insufficient to link him definitively to the crime; and, in support of this, notes his own testimony that the slippers belonged to his roommate.
 {¶ 22} This argument is unavailing. The jury could reasonably conclude that the slipper print revealed that Crouse had broken into the office and desk at the gas station, where the envelope had been, and trod upon the envelope. Viewed in a light most favorable to the prosecution, this is sufficient to establish the elements of breaking and entering, R.C. 2911.13.
 {¶ 23} In relation to the Moore apartment incident, Crouse was convicted for burglary with a firearm specification, grand theft, and theft. Regarding burglary, R.C. 2911.12 provides, in pertinent part:
 {¶ 24} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 25} "* * *
 {¶ 26} "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;
 {¶ 27} "* * *
 {¶ 28} "(4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."
 {¶ 29} Regarding grand theft and theft, R.C. 2913.02
provided, in pertinent part:
 {¶ 30} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * *
 {¶ 31} "(1) Without the consent of the owner or person authorized to give consent; * * *
 {¶ 32} "* * *
 {¶ 33} "[(B)](4) If the property stolen is a firearm or dangerous ordnance, a violation of this section is grand theft, a felony of the fourth degree."
 {¶ 34} Crouse argues that the only evidence linking him to the Moore apartment incident are the fingerprints found upon the broken window glass. While admitting that this shows he touched the glass, he asserts that his explanation that he touched it the day following the incident, while removing it from the pavement, renders the evidence insufficient to support his conviction.
 {¶ 35} This argument is unavailing. The jury could reasonably conclude that Crouse's fingerprints appeared on the broken glass due to him breaking it, to gain entrance into Moore's apartment. And various valuables, including a loaded pistol, were stolen from that apartment. Although tenuous, the jury could reasonably conclude from this that Crouse committed both theft, and grand theft, as defined by the statute. Crouse's failure to separate these causes of action may have influenced the jury, but this issue has not been raised on appeal nor shall we deal with it here.
 {¶ 36} Thus, Crouse's third assignment of error is without merit.
 {¶ 37} By his fourth assignment of error, Crouse asserts that the verdict was against the manifest weight of the evidence.
 {¶ 38} "When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. * * *
 {¶ 39} "`The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' * * * The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. * * * The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. * * *
 {¶ 40} "When assessing witness credibility, `the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.' * * *. `Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it.' * * *. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. * * *" State v. Ngiraingas, 11th Dist. No. 2004-A-0034, 2005-Ohio-7058, at ¶¶ 63-65. (Citations omitted.)
 {¶ 41} Crouse notes that this court has previously cited the decision of the Eighth District in State v. Mattison (1985),23 Ohio App.3d 10, 14, wherein that court set forth eight factors suitable for use as guidelines in reviewing whether a verdict is against the manifest weight of the evidence. See, e.g., Statev. Harris (Apr. 10, 1998), 11th Dist. No. 96-T-5512, 1998 Ohio App. LEXIS 1540, at 7-8. Crouse then urges that the evidence used to convict him of both the Painesville One Stop Marathon and the Moore apartment incidents is insufficient under Mattison.
 {¶ 42} This court has specifically rejected the Mattison
factors as a standard of review: we have merely approved them for potential use in discussing manifest weight challenges. Harris
at 7-8. However, even under Mattison, Crouse's arguments fail.
 {¶ 43} First, Crouse argues that the slipper print evidence connecting him with the Painesville One Stop Marathon incident is "incredible," violating the first guideline set forth inMattison. He states that it is incredible that a person would commit a break-in wearing slippers, especially slippers which did not fit. This is not incredible. A jury might well consider that a criminal would seek to "cover his tracks" through such a trick.
 {¶ 44} Second, Crouse maintains that the state failed to prove he was connected with the Painesville One Stop Marathon incident, in violation of the fourth Mattison factor. This is untrue. The state introduced the slipper evidence, which directly linked Crouse to the break-in.
 {¶ 45} Third, Crouse argues that the testimony of Moore, identifying Crouse as the man he spotted outside his apartment the evening before the incident, was "vague, uncertain, conflicting, fragmentary * * *" in violation of the eighthMattison factor. Crouse premises this argument on the conflict between the description of the man Moore gave the police, and his own appearance, as well as the discrepancy between the dates when Moore stated that he informed the police of this man, and the date the police recalled him volunteering the information.
 {¶ 46} Even accepting Crouse's argument that Moore's identification of him is vague, would not render the verdict against Crouse against the manifest weight of the evidence. Crouse's fingerprints were on the broken glass of the window through which the intruder gained access to Moore's apartment. The only explanation which Crouse could offer for this was that he happened by the apartment the day following the incident, and removed the glass from the pavement, as a public service. We note that the seventh guideline set forth in Mattison warns against self-serving testimony. Id. at 14.
 {¶ 47} Thus, even applying the test suggested by Crouse, his convictions on each of the crimes are not against the manifest weight of the evidence. Nothing indicates that "* * * the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered."Ngiraingas at ¶ 63. Crouse's fourth assignment of error is without merit.
 {¶ 48} We next turn to Crouse's challenges to his sentence. The trial judge sentenced him to serve six months each for breaking and entering, and theft; two years for burglary, with an additional year for the gun specification; and one year for grand theft. The terms are consecutive, and total five years.
 {¶ 49} By his first and second assignments of error, Crouse attacks his sentences. In sentencing Crouse, the trial court relied upon judicial factfinding, formerly mandated by statute, but now deemed unconstitutional and void by the Supreme Court of Ohio. On that basis, Crouse's assignments of error are with merit.
 {¶ 50} Crouse's sentences in this case are impacted by the recent decision of the Supreme Court of Ohio in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856. In Foster, the Supreme Court held that R.C. 2929.14(B) and (E)(4) and2929.19(B)(2) are unconstitutional for violating the Sixth Amendment because they deprive a defendant of the right to a jury trial, pursuant to Apprendi v. New Jersey (2000), 530 U.S. 466, and Blakely v. Washington (2004), 542 U.S. 296.
 {¶ 51} Further, pursuant to United States v. Booker (2005),543 U.S. 220, the Supreme Court's remedy was to sever the unconstitutional provisions of the Revised Code, including R.C.2929.14(B) and (E)(4) and 2929.19(B)(2). After severance, judicial factfinding is not required before imposing a sentence within the basic ranges authorized by R.C. 2929.14(A), or consecutive sentences, based on a jury verdict or admission of the defendant. Foster at paragraph two of the syllabus.
 {¶ 52} Since Foster was released while this case was pending on direct review, Crouse's sentences are void, must be vacated, and remanded for resentencing. Foster at ¶ 103-104. Upon remand, the trial court is no longer required to make findings or give its reasons for imposing maximum, consecutive or more than minimum sentences. Id. at paragraph seven of the syllabus.
 {¶ 53} Crouse's convictions are affirmed. The sentences imposed by the Lake County Court of Common Pleas are vacated. This matter is remanded for resentencing and for proceedings consistent with this opinion pursuant to Foster.
Rice, J., concurs, Grendell, J., concurs in judgment only.
[1] We note, in passing, that pursuant to H.B. 12, Acts 2004, effective April 8, 2004, grand theft based on theft of a gun became a felony of the third, rather than fourth, degree.